## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACK POPE,

          **Plaintiff,**

   v.

AMERICAN COLLEGE OF PHYSICIANS,
   INC.,

          **Defendant.**

Civil Action No. 1:07cv01023-RCL

## MOTION TO DISMISS OF DEFENDANT
## AMERICAN COLLEGE OF PHYSICIANS, INC.

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) and Local Civil Rule 7,

Defendant American College of Physicians, Inc. ("ACP") moves to dismiss with

prejudice the Complaint in its entirety for failure to state a claim.[1]  The basis for this

---

[1]    For the Court's convenience, ACP has attached copies of the documents referenced or relied upon by Plaintiff in the Complaint to the Declaration of Robert Doherty, including the severance agreement (filed separately under seal), Plaintiff's letter requesting a reasonable accommodation (filed separately under seal), and the Authorization of Release of Information.  Should this Court determine that these documents are "matters outside the pleading," ACP requests that this motion be treated as a Motion for Summary Judgment.  See Fed. R. Civ. P. 12(b)(6).

motion is set forth in the accompanying Memorandum of Points and Authorities in

Support of Defendant American College of Physicians, Inc.'s Motion to Dismiss.

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

_____/s/_____
Frank C. Morris, Jr.
Bar No. 211482

_____/s/_____
Minh N. Vu
Bar No. 444305
1227 25th Street, N.W.
Washington, D.C. 20037
(202) 861-0900
Attorneys for ACP
American College of Physicians, Inc.

DATED: July 27, 2007

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served this 27th day
of July, 2007, by electronic service, on the following:

Alan Lescht
Alan Lescht and Assoc., P.C.
1050 17th St., N.W., Suite 220
Washington, D.C. 20036

Attorney for Plaintiff

_____/s/_____
Minh N. Vu
D.C. Bar No. 444305

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JACK POPE,

           Plaintiff,

v.

AMERICAN COLLEGE OF PHYSICIANS,
    INC.,

           Defendant.

Civil Action No. 1:07cv01023-RCL

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT AMERICAN COLLEGE
OF PHYSICIANS, INC. 's MOTION TO DISMISS[1]

I.    **INTRODUCTION**

This case concerns allegations by Plaintiff Jack Pope, a former employee of ACP,

American College of Physicians, Inc. ("Defendant" or "ACP") that ACP in 2006 made

defamatory and disparaging statements and disclosed his medical information to

investigators of the United States National Security Agency who were conducting a

background investigation of Plaintiff for a security clearance.  Plaintiff claims that the

alleged disclosures constituted (1) a breach of his severance agreement (Count I); (2) a

violation of the Americans With Disabilities Act's ("ADA") non-disclosure requirements

for confidential medical information (Count II); and (3) retaliation under the ADA for

---

[1]    For the Court's convenience, ACP has attached copies of the documents
referenced or relied upon by Plaintiff in the Complaint to the Declaration of Robert
Doherty, including the severance agreement (filed separately under seal), Plaintiff's letter
requesting a reasonable accommodation (filed separately under seal), and the
Authorization of Release of Information.  Should this Court determine that these
documents are "matters outside the pleading," ACP requests that this motion be treated as
a Motion for Summary Judgment.  See Fed. R. Civ. P. 12(b)(6).

requesting a reasonable accommodation more than two and a half years before (Count III).

ACP files this Motion to Dismiss all three counts because, even accepting all of the allegations as true, Plaintiff fails to state a legally cognizable claim. As explained below, even assuming that ACP made the alleged disclosures, such disclosures did not constitute a breach of the alleged agreement or violate the ADA because on November 7, 2005, Plaintiff executed an Authorization for Release of Information authorizing (1) NSA investigators to obtain and provide "any information relating to [Plaintiff's] activities," including, "but ... not limited to [plaintiff's] performance, attendance, disciplinary, [and] employment history....information"; and (2) "custodians of records and sources of information pertaining to [plaintiff]" such as ACP "to release such information upon request of the investigator. . . regardless of any previous agreement to the contrary." (Authorization for Release of Information, Ex. 2 to Decl. of Robert Doherty dated July 23, 2007 ("Doherty Decl.") ¶¶ 1, 4) (emphasis added); Compl. ¶ 15.)  Plaintiff gave this Authorization to the NSA for the background investigation and the investigators for NSA provided a copy of it to ACP in connection with their requests to ACP.

Plaintiff cannot state a claim for retaliation under the ADA because he has alleged no evidence to establish a causal connection between his request for reasonable accommodation in May 2003 -- which Plaintiff admits was granted -- and the alleged adverse actions by ACP in 2006, more than two and half years later.

## II.     FACTUAL ALLEGATIONS

This section sets forth the Plaintiff's factual allegations which ACP will assume to be true solely for the purpose of this Motion.  The documents referenced in the Complaint are attached to the Declaration of Robert Doherty dated July 23, 2007.

Plaintiff was employed by ACP as Director of Public Affairs from December 14, 1998 to April 19, 2005.  (Compl. ¶ 7.)  During his employment, Plaintiff requested and ACP granted him reasonable accommodations for his disabilities.  (Id. ¶ 8.)  In connection with his request for reasonable accommodations, Plaintiff provided ACP with confidential medical information.  (Id.)  Plaintiff made this request for reasonable accommodations on May 20, 2003.  (See Doherty Decl. ¶ 3 and Ex. 1.)[2]

Nearly two years later, the parties agreed to terminate Plaintiff's employment as of April 29, 2005 and entered into a written agreement setting forth the terms of the termination (the "Agreement").  (Compl. ¶ 9.)  A copy of the Agreement is attached as Exhibit 2 to the Doherty Declaration.[3]  The Complaint alleges that the Agreement "prohibited either party from making any defamatory statements to any third parties either relating to Plaintiff, his employment, or that would be considered to be harmful to Plaintiff, or that would be considered harmful to the reputation of Plaintiff."  (Compl. ¶ 10.)

In or about December 2005, the U.S. National Security Agency, Central Security Service ("NSA"), extended a conditional offer of employment to Plaintiff subject to a background investigation.  (Compl. ¶ 14.)  In connection with the background

---

[2]     This document has been filed under seal because the letter contains confidential medical information.

[3]     This document has been filed under seal because the agreement is confidential.

investigation, Plaintiff provided the NSA with an Authorization for Release of

Information (the "Authorization"). (Compl. ¶ 15.) A copy of the Authorization is at

Exhibit 2 to the Doherty Declaration. Plaintiff signed the Authorization on November 7,

2005. (See Authorization, Ex. 3 to Doherty Decl.)

> The first paragraph of the Authorization states, in relevant part:
>
> **I Authorize** any investigator, special agent, or duly accredited representative of the authorized Federal agency conducting my background investigation, <u>to obtain any information relating to my activities from</u> individuals. . . employers . . . or other sources of information. <u>This information may include, but is not limited to,</u> my . . . achievement, performance, attendance, disciplinary, employment history. . . information . . . .

(<u>Id.</u> (emphasis added, bold in original).)

> The fourth paragraph of the Authorization states, in full:
>
> **I Authorize** custodians of records and sources of information pertaining to me to release such information upon request of the investigator, special agent, or other duly accredited representative of any Federal agency authorized above <u>regardless of any previous agreement to the contrary.</u>

(<u>Id.</u> (emphasis added, bold in original).)

> The Complaint alleges that in or about January 2006, ACP disclosed confidential

medical information about Plaintiff's disabilities and made unspecified "defamatory or

derogatory statements" about Plaintiff to the investigators for NSA. (Compl. ¶¶ 16-17.)

Plaintiff alleges that as a result of the disclosures, Plaintiff did not get the job that he had

been purportedly offered by the NSA. (<u>Id.</u> ¶ 18.)

## III. ARGUMENT

### A. The Applicable Legal Standards

> A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to

state a claim tests the legal sufficiency of a complaint. <u>See Browning v. Clinton</u>, 292

F.3d 235, 242 (D.C. Cir. 2002). To survive a 12(b)(6) motion, a complaint must present "enough facts to state a claim to relief that is plausible on its face" and allege facts that rise "above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 1974 (2007). While the Court gives a plaintiff the benefit of all inferences that can be reasonably derived from the facts alleged in the complaint and presumes plaintiffs' factual allegations to be true, the Court need not accept any unsupported legal conclusions cast in the form of factual allegations. Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

**B.    The Complaint Fails to State a Claim for Retaliation.**

The Supreme Court recently clarified the question of what facts a plaintiff must plead in order to state a claim under Rule 8 of the Federal Rules of Civil Procedure and it is clear that Plaintiff has not met this standard with regard to his ADA retaliation claim. See Bell Atl., 127 S. Ct. at 1964-65. The Court stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Court further opined that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation. . . . Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1964 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 at 235-36 (3d ed. 2004)). The Court observed that "the pleading must contain something . . . more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action . . . on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." Id. (internal citations and quotations omitted).

In the context of a claim brought under Section 1 of the Sherman Act which prohibits a "contract, combination. . .or conspiracy in restraint of trade," the Court stated that "such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Id. at 1965 (emphasis added).

To state a prima facie case of retaliation under the ADA, Plaintiff must show that (1) he engaged in protected activity; (2) he was subjected to an adverse employment action by the employer; and (3) there existed a causal link between the adverse action and the protected activity. See Mayers v. Laborers' Health & Safety Fund of N. America, 478 F.3d 364, 369 (D.C. Cir. 2007). Count III of the Complaint alleges that "defendant violated the ADA by retaliating against Plaintiff for exercising his right to request reasonable accommodations." (Compl. ¶ 27.) Besides this allegation, the only other factual allegations in support of Plaintiff's claim of retaliation in the Complaint are that (1) he requested and was granted a reasonable accommodation during his employment with defendant (Compl. ¶ 8); and (2) ACP allegedly disclosed his confidential medical information and made disparaging and defamatory remarks to NSA investigators in connection with his background check "in or about January 2006." (Compl. ¶¶ 16-17.) As set forth in the Doherty Declaration and Exhibit 1 thereto, Plaintiff made his request

for reasonable accommodations on May 20, 2003. (<u>See</u> Doherty Decl. ¶ 3 and Ex. 1 thereto.)

Plaintiff fails to state a claim of retaliation under the ADA because there is not a single fact alleged that provides "plausible grounds" to infer a causal link between his request for reasonable accommodation in May 2003, and the alleged adverse employment action by ACP in January 2006, more that two and half years later. <u>Bell Atl.</u>, 127 S. Ct. at 1965. Plaintiff cannot simply rely on the allegation that he asked for a reasonable accommodation and later supposedly experienced an alleged adverse employment action because the <u>two and half year gap</u> between the two events is much too long to allow any inference of causation. In fact, the D.C. Circuit in <u>Mayers</u> just recently affirmed the grant of summary judgment on a plaintiff's ADA retaliation claim where there was only "an eight or nine-month gap between the...protected activity" -- her request for reasonable accommodations and the alleged retaliatory acts. 478 F.3d at 369. In so holding, the D.C. Circuit noted that the Supreme Court in <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001), cited with approval circuit cases refusing to find temporal proximity of three and four months as evidence of causation. In <u>Clark</u>, the Supreme Court held that a 20-month gap between the alleged protected activity and the adverse employment action "suggests, by itself, no causality at all." <u>Id.</u> at 274. <u>See also</u> <u>Duncan v. Harvey</u>, 479 F. Supp. 2d 125, 135 (D.D.C. 2007) ("thirteen-month lapse is too long to permit an inference of retaliatory intent"). At the risk of stating the obvious, the gap in this case is 10 months longer than the 20-month gap that the Supreme Court said in <u>Clark</u> suggests "no causality at all." <u>Id.</u>

Thus, Plaintiff has failed to allege a single fact that would "raise a right to relief [under his retaliation theory] above the speculative level." Bell Atl., 127 S. Ct. at 1964. The Supreme Court stated that "the pleading must contain something more...than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action . . . on the assumption that all of the allegations in the complaint are true." Id. (internal citations and quotations omitted)(emphasis added). Here, there are not even enough facts to support such a suspicion, let alone "more" than such a suspicion because the Supreme Court has already held that a 20-month gap between a protected activity and an adverse employment action "suggests...no causality at all." Clark, 532 U.S. at 274. Indeed, the fact that ACP granted Plaintiff's requested accommodations (Compl. ¶ 8) back in May 2003 (Doherty Decl. ¶ 3) is further evidence that there is absolutely no causal connection between the requested accommodation and the ACP's provision of information to NSA investigators pursuant to Plaintiff's Authorization. For all these reasons, Plaintiff fails to state a claim or retaliation.

### C.    The Complaint Fails to State a Claim for Breach of Contract.

In order to state a claim for breach of contract, Plaintiff must allege facts that a contract between the parties was formed and that there was a breach of the contract. See In re Minister Papandreou, 139 F.3d 247, 252 (D.C. Cir. 1998). Plaintiff claims that ACP promised in the Agreement not to make any "defamatory or derogatory" statements about him to any third party, and that ACP breached the Agreement by allegedly making such statements to the NSA investigators. (Compl. ¶¶ 17, 17, 23.) As discussed below, Plaintiff cannot prevail on his breach of contract claim because he had expressly authorized ACP's provision of "any information" in ACP's possession to the NSA

investigators, "<u>regardless of any previous agreement to the contrary</u>."  <u>See</u> Authorization,

Ex. 3 to Doherty Decl. ¶¶ 1, 4 (emphasis added).  The claim also fails because Plaintiff

has not alleged any facts to even suggest that the information provided to the NSA

investigators was "defamatory or derogatory," or otherwise harmful to him.

As discussed in Section II, Plaintiff, on November 7, 2005, signed an

Authorization for Release of Information which was provided to ACP when NSA

investigators contacted ACP for information regarding Plaintiff to determine his

eligibility for a security clearance.  (<u>Id</u>; Doherty Decl. ¶ 5; Compl. ¶ 15.)  In the

Authorization, Plaintiff stated:

> **I Authorize** custodians of records and sources of information pertaining to me to
> release such information upon request of the investigator, special agent, or other
> duly accredited representative of any Federal agency authorized above <u>regardless</u>
> <u>of any previous agreement to the contrary</u>.

(Authorization, Ex. 3 to Doherty Decl. ¶ 4) (emphasis added, bold in original).  The

information that Plaintiff authorized ACP to release is described in the first paragraph of

the Authorization, which refers to "any information relating to [Plaintiff's] activities"

from numerous sources, including "employers" such as ACP.  (<u>Id.</u> ¶ 1.)  The

Authorization goes on to provide a non-inclusive list of information that can be provided

to the federal investigators, including "but . . .not limited to, [Plaintiff's]. . . achievement,

performance, attendance, disciplinary, [and] employment history . . . information."  (<u>Id.</u>)

"A party may waive any provision, either of a contract or of a statute, intended for

his benefit."  <u>See</u> <u>Soler v. Dep't of the Treasury</u>, No. 05-3331, 2006 WL 304687, at *3

(Fed. Cir. Feb. 9, 2006) (citing <u>Shutte v. Thompson</u>, 82 U.S. 151, 159 (1872)).

By signing the Authorization, Plaintiff gave ACP permission to provide the NSA

investigators "any information" about Plaintiff in its possession, "regardless of" any

restrictions set forth in the prior Agreement, thereby waiving his rights under that Agreement. Accordingly, ACP did not breach the Agreement when it provided information about Plaintiff to the NSA investigators. See Soler, 2006 WL 304687, at *3 (holding that the execution by the plaintiff in that case of the same Authorization for Release of Information that Plaintiff Pope signed in this case waived his rights under a settlement agreement with his prior employer that would have barred the former employer from disclosing information concerning his employment); Courtright v. Wal-mart Stores Inc., No. CIV-S-00-0446WBS/JFM, 2001 WL 828259, at *4 (E.D. Cal. June 11, 2001) (holding that plaintiff's execution of a form authorizing former employers to release information concerning the plaintiff extinguished his rights to confidentiality under a previously executed settlement agreement with Wal-mart and barred his breach of contract claim); Cox. v. Nasche, 70 F.3d 1030, 1031 (9th Cir. 1995) (plaintiff's execution of federal "Authority for Release of Information" form that was virtually identical to the one signed by Plaintiff Pope constituted "consent to statements within the release's scope and holds those statements absolutely privileged.")

Anticipating this obvious bar to his breach of contract claim, Plaintiff alleges that the Authorization "did not authorize disclosure of derogatory, disparaging, and false information, and also did not authorize employers to disclose information about his medical condition." (Compl. ¶ 15.) This argument lacks merit for two reasons:

First, the language of the Authorization granted permission to disclose "any information" and did not attempt to limit the information in any way. Given that employers often have information that may be considered derogatory or disparaging about an employee (e.g., poor job performance, misconduct, etc.), Plaintiff cannot claim

that the phrase "any information" really only meant neutral to positive information. In fact, such a restriction would seriously undermine the government's ability to conduct background checks for security sensitive positions. Disparaging or derogatory information would be highly relevant to the question of whether an applicant should receive a security clearance and it would not be reasonable to assume that the NSA intended for this information to be excluded by the Authorization, in the absence of express language to this effect. Indeed, had ACP limited its response to the NSA investigators' inquiries about Plaintiff based on the Agreement, it is likely that they would have demanded that Plaintiff clarify that he was waiving his rights under the Agreement or would have declared his background check incomplete.

Second, even if the Court were to read into the broad Authorization an unstated carve-out for allegedly defamatory, disparaging, or false information, Plaintiff still cannot state a claim because Plaintiff has pled no facts, that, if true, would support the conclusion that ACP actually provided any defamatory, derogatory or false information about Plaintiff to the NSA investigators or any one else. The only statement on this subject in the Complaint is the following conclusory allegation: "On information and belief, in or about January 2006, [ACP] also unlawfully made defamatory or derogatory statements to third parties relating to Plaintiff, his employment, and that would be considered to be harmful to Plaintiff, his reputation or standing of Plaintiff." (Compl. ¶ 17.) The Complaint provides absolutely no clue about what these statements might be.

As previously discussed, "a plaintiff's obligation [under Rule 8] to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl., 127 S.

Ct. at 1964. Plaintiff's entire case is predicated on the allegation that ACP made

defamatory and derogatory statements about Plaintiff. Plaintiff must allege some facts to

suggest that such statements were actually made. Furthermore, the Complaint must "give

the defendant <u>fair notice</u> of what the. . .claim is and the grounds upon which its rests."

<u>Id.</u> (emphasis added). In the instant case, Plaintiff's bald assertion that ACP made

"defamatory or derogatory statements to third parties" -- with no information about who

conveyed the information or what information was conveyed – does not satisfy the

requirements of Rule 8 because it does not give ACP notice of what Plaintiff claims it did

wrong. <u>Cf.</u> <u>Caudle v. Thomason</u>, 942 F. Supp. 635, 638 (D.D.C. 1996). ("In order to

plead defamation, a plaintiff should allege specific defamatory comments . . . .")

  In sum, Plaintiff's breach of contract claim must be dismissed because he has

failed to state a claim for breach and there has been no breach of the Agreement.

**D.  The Complaint Fails to State a Claim for a Violation of the ADA's Confidential Medical Records Provisions.**

  The Complaint alleges that ACP disclosed confidential medical information about

Plaintiff's disabilities to NSA investigators without his consent and that this disclosure

violated the ADA. (Compl. ¶¶ 16, 18.) The broad Authorization that Plaintiff signed

giving ACP permission to disclose "any information" in ACP's possession to the NSA

investigators also disposes of this argument. (<u>See</u> Authorization, Ex. 2 to Doherty Decl.

¶ 1.) Clarifying what "any information" means, the Authorization states that "[t]his

information may include, but is not limited to. . . [Plaintiff's] performance, attendance. . .

[and] employment history . . . information." <u>Id.</u> The Complaint alleges that the

confidential medical information came from Plaintiff's request for reasonable

accommodations for his disabilities which ACP granted years earlier. (Compl. ¶ 8.)

Because reasonable accommodations under the ADA by definition pertain to a person's employment, see 42 U.S.C. § 12112(a) and (b)(5)(A), the information falls squarely within the "employment history" category of information that Plaintiff allowed ACP to disclose to NSA investigators. (See Authorization, Ex. 2 to Doherty Decl.)

Plaintiff argues that the broad language of paragraph 1 of the Authorization "did not authorize former employers to disclose information about his medical condition." (Compl. ¶ 15.) There is, however, no basis for the Court to impose this unstated limitation on language that is unambiguous. There is no carve-out in Paragraphs 1 or 4 of the Authorization for medical information. Plaintiff tries to finesse this point by alleging that Plaintiff "provided the investigator with separate and specific authorizations directed to his health care providers for the disclosure of his medical information." (Compl. ¶ 15.) Even if true, this fact does not change the Authorization's broad language consenting to ACP's provision of "any information" concerning Plaintiff's employment history to NSA's investigators which has no limitation for medical information. Health care providers (unlike employers) are subject to other laws and regulations that govern their handling of medical records and it is no surprise that Plaintiff would be required to execute additional releases for those entities. Moreover, the fact that Plaintiff was required by NSA investigators to sign releases to authorize his health care providers to disclose his medical information underscores that fact that NSA expected to obtain all information from all sources, including ACP.

IV.    CONCLUSION

As shown above, by executing the Authorization, Plaintiff waived any rights he had under the Agreement with ACP and the ADA regarding information relating to his

employment with ACP. Accordingly, ACP did not breach the Agreement or violate the ADA when it provided information to investigators for the NSA about Plaintiff. In addition, Plaintiff has not stated sufficient facts to establish a breach of the contract because he has not alleged facts to suggest that ACP made any defamatory or derogatory statements. A mere conclusory allegation that defamatory or derogatory statements were made -- with no other information about what was said -- is simply not enough to state a claim under Rule 8. Finally, Plaintiff fails to state a claim of retaliation under the ADA because there is not a scintilla of evidence to suggest that the alleged statements by ACP to NSA's investigators were in any way caused by Plaintiff's request for a reasonable accommodation more than two a half years before. For all these reasons, the Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.


_____/s/_____

Frank C. Morris, Jr.
Bar No. 211482


_____/s/_____

Minh N. Vu
Bar No. 444305
1227 25th Street, N.W.
Washington, D.C. 20037
(202) 861-0900
Attorneys for ACP
American College of Physicians, Inc.

DATED: July 27, 2007

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Memorandum in Support of Defendant American College of Physicians, Inc.'s Motion to Dismiss was served this 27th day of July, 2007, by electronic service, on the following:

> Alan Lescht
> Alan Lescht and Assoc., P.C.
> 1050 17th St., N.W., Suite 220
> Washington, D.C. 20036
>
> Attorney for Plaintiff

_____ /s/ _____
Minh N. Vu
D.C. Bar No. 444305

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JACK POPE,**<br><br>          **Plaintiff,**<br><br>    **v.**<br><br>**AMERICAN COLLEGE OF PHYSICIANS,<br>    INC.,**<br><br>          **Defendant.** | **Civil Action No. 1:07cv01023-RCL** |

## PROPOSED ORDER

AND NOW, this ___ day of _____, 2007, upon consideration of Defendant American College of Physicians, Inc.'s ("ACP") Motion to Dismiss the Complaint, it is

ORDERED, that ACP's Motion is hereby granted in its entirety, and the Complaint is hereby dismissed with prejudice.

Date: _____, 2007

_____
United States District Judge

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Proposed Order was served this 27th day of July, 2007, by electronic service, on the following:

> Alan Lescht
> Alan Lescht and Assoc., P.C.
> 1050 17[th] St., N.W., Suite 220
> Washington, D.C. 20036
>
> Attorney for Plaintiff

_____/s/_____
Minh N. Vu
D.C. Bar No. 444305

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

JACK POPE,

Plaintiff,

v.

AMERICAN COLLEGE OF PHYSICIANS,
INC.,

Defendant.

Civil Action No. 1:07cv01023-RCL

DECLARATION OF ROBERT DOHERTY

I, Robert Doherty, declare as follows based on my personal knowledge:

1.      I am Senior Vice President, Governmental Affairs and Public Policy, of the
American College of Physicians (ACP). I have held this position since 1998. My office is
located at 2011 Pennsylvania Avenue, N.W. in Washington, D.C. I am submitting this
declaration in support of ACP's Motion to Dismiss the Complaint filed by Jack Pope, a former
employee of ACP.

2.      Jack Pope was employed by ACP as the Director of Public Affairs from
December 14, 1998 until April 29, 2005. Mr. Pope worked in the ACP's Washington, D.C.
office under my supervision.

3.      During his employment with ACP, Mr. Pope sent me a letter dated May 20, 2003,
requesting a reasonable accommodation under the Americans With Disabilities Act. A true and
accurate copy of the letter (with all medical information redacted), is attached as Exhibit 1. ACP
provided an accommodation.

4.      Nearly two years later, on April 29, 2005, Mr. Pope's employment with ACP
ended for reasons entirely unrelated to his 2003 request for reasonable accommodation, namely a
position elimination.  In connection with the separation, ACP and Mr. Pope entered into a
termination agreement dated April 29, 2005, a true and correct copy of which is attached as
Exhibit 2.

5.      In January 2006, an investigator from the United States Secret Service came to the
190 North Independence Mall West, Philadelphia, Pennsylvania, offices of ACP seeking
information about Mr. Pope for a security clearance/background check.  He provided ACP with a
copy of an Authorization for Release of Information, signed by Mr. Pope on November 7, 2005.
A true and accurate copy of this Authorization is attached at Exhibit 3.  ACP relied on this
Authorization in providing information to the Secret Service investigator regarding Mr. Pope.

I declare under penalty of perjury that the foregoing is true and correct.


Date:  July 23, 2007

                                        Robert B. Doherty

- 2 -

EXHIBIT 1 TO ROBERT DOUGHERTY DECLARATION HAS BEEN FILED UNDER SEAL.

EXHIBIT 2 TO ROBERT DOUGHERTY DECLARATION HAS BEEN FILED UNDER SEAL.

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

Form approved:
OMB No. 3206-0007
NSN 7540-00-634-4036
86-111

# UNITED STATES OF AMERICA

## AUTHORIZATION FOR RELEASE OF INFORMATION

Carefully read this authorization to release information about you, then sign and date it in ink.

**I Authorize** any investigator, special agent, or other duly accredited representative of the authorized Federal agency conducting my background investigation, to obtain any information relating to my activities from individuals, schools, residential management agents, employers, criminal justice agencies, credit bureaus, consumer reporting agencies, collection agencies, retail business establishments, or other sources of information. This information may include, but is not limited to, my academic, residential, achievement, performance, attendance, disciplinary, employment history, criminal history record information, and financial and credit information. I authorize the Federal agency conducting my investigation to disclose the record of my background investigation to the requesting agency for the purpose of making a determination of suitability or eligibility for a security clearance.

**I Understand** that, for financial or lending institutions, medical institutions, hospitals, health care professionals, and other sources of information, a separate specific release will be needed, and I may be contacted for such a release at a later date. Where a separate release is requested for information relating to mental health treatment or counseling, the release will contain a list of the specific questions, relevant to the job description, which the doctor or therapist will be asked.

**I Further Authorize** any investigator, special agent, or other duly accredited representative of the U.S. Office of Personnel Management, the Federal Bureau of Investigation, the Department of Defense, the Defense Investigative Service, and any other authorized Federal agency, to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for access to classified information and/or for assignment to, or retention in a sensitive National Security position, in accordance with 5 U.S.C. 9101. I understand that I may request a copy of such records as may be available to me under the law.

**I Authorize** custodians of records and sources of information pertaining to me to release such information upon request of the investigator, special agent, or other duly accredited representative of any Federal agency authorized above regardless of any previous agreement to the contrary.

**I Understand** that the information released by records custodians and sources of information is for official use by the Federal Government only for the purposes provided in this Standard Form 86, and that it may be redisclosed by the Government only as authorized by law.

Copies of this authorization that show my signature are as valid as the original release signed by me. This authorization is valid for five (5) years from the date signed or upon the termination of my affiliation with the Federal Government, whichever is sooner. Read, sign and date the release on the next page if you answered "Yes" to question 21.

| Signature (Sign in ink) | Full Name (Type or Print Legibly) | Date Signed |
|---|---|---|
| *Juck E. Pope* | *Juck Edwin Pope* | *11/7/2005* |
| Other Names Used | | Social Security Number *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* |

| Current Address (Street, City) | | State | ZIP Code | Home Telephone Number (Include Area Code) |
|---|---|---|---|---|
| *11813 Milbern Dr., Potomac* | | *MD* | *20854* | *(301) 983-5995* |

Page 10