**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **JACK POPE,** |
| **Plaintiff,** |
| **v.** |
| **AMERICAN COLLEGE OF PHYSICIANS, INC.,** |
| **Defendant.** |

Civil Action No. 1:07cv01023-RCL

**(REDACTED VERSION – Unredacted version Filed Under Seal)[1]**

**DEFENDANT AMERICAN COLLEGE OF PHYSICIANS, INC. 'S**
**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS MOTION TO DISMISS**

## I.    INTRODUCTION

The facts necessary for the Court's grant of Defendant American College of

Physicians, Inc.'s ("ACP")'s Motion to Dismiss are straightforward and undisputed.[2]

After receiving a conditional offer of employment with the National Security Agency,

Plaintiff signed a comprehensive Authorization for Release of Information

("Authorization") required by the agency so that it could conduct his background check.

(Declaration of Jack Pope dated Sept. 4, 2007 ("Pope Decl.") Ex. C.)  This Authorization

authorized NSA's investigators "to obtain <u>any information</u> relating to [Plaintiff's]

activities from individuals . . . employers . . . or other sources of information," and further

---

[1]    This publicly-filed Reply Memorandum and the accompanying Second Declaration of Robert Doherty with one Exhibit have been redacted to the extent necessary to exclude Plaintiff's medical information and information from a background investigation that Plaintiff has filed under seal and claims to be confidential.

[2]    Because Plaintiff has introduced materials outside of the Complaint, ACP assumes that the Court will treat its Motion to Dismiss as a Motion for Summary Judgment under Fed. R. Civ. P. 12(b)(6).

"authorize[d] custodians of records and sources of information pertaining to [him] to release such  information upon request of the investigator . . . <u>regardless of any previous agreement to the contrary</u>."  <u>Id.</u>  (emphasis added.)  Upon being provided a copy of this broad Authorization, ACP cooperated with the NSA investigator and provided him with all information requested, some of which pertained to Mr. Pope's request for reasonable accommodations for an alleged disability back in 2003.  (Doherty Decl. ¶ 5, July 23, 2007; Pope Decl. Exs. D & E.)  ACP's Senior Vice President of Governmental Affairs and Public Policy, Robert Doherty, also provided responses to the investigator's questions about Plaintiff.  (Pope Decl. Exs. D & E at 10-11.)

Plaintiff now brings this breach of contract and ADA action for damages against ACP for doing precisely what Plaintiff explicitly and in writing authorized ACP to do: provide "any information relating to [his] activities" to NSA investigators.  (Pope Decl. Ex. C.)  Plaintiff's attempt in this litigation to rewrite the Authorization and narrow its explicitly broad scope to exclude derogatory, defamatory, or medical information must be rejected because, as explained below, there is no legal or factual basis for such a revision.  Furthermore, a judicial decision that creates unstated limitations on the scope of a standard Authorization for Release of Information form used by the United States for its background checks and imposes liability on employers for not abiding by such unstated limitations will set a dangerous precedent.  Concerned about legal liability, employers may become reluctant to engage in full disclosure regarding applicants for positions involving national security which will compromise the United States' ability to conduct background checks.  There is no reason to embark on this dangerous path when the

language of the Authorization is broad and does not exclude derogatory, defamatory, or medical information.

Plaintiff's breach of contract claim also fails because, even assuming for the sake of argument that the Authorization did not include defamatory information, Mr. Doherty's statements are not defamatory as a matter of law. Plaintiff also has neither pled nor produced any evidence to suggest that any of Mr. Doherty's statements were false. In fact, the evidence submitted by Plaintiff at Exhibit E to his Declaration makes clear that the alleged statements about Plaintiff were fair and accurate.

Finally, Mr. Pope cannot proceed on his retaliation claim because the D.C. Circuit has made clear that such a claim must be dismissed where, as here, there is <u>no</u> evidence to establish a causal connection between the protected activity and the alleged adverse employment action.

## II.    RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

In apparent recognition that the Complaint does not allege sufficient facts to state a claim for relief, Plaintiff has submitted a Declaration with his Opposition Memorandum alleging additional facts along with several exhibits, including what appears to be portions of the NSA investigator's background investigation report on Plaintiff. (Pope Decl. Ex. E.) Because this matter is before the Court on a Motion to Dismiss (or for summary judgment), ACP will assume solely for the purpose of this Motion that the facts that are pled in the Complaint and supported by the exhibits are true. However, four assertions contained in Plaintiff's Declaration are contradicted by the exhibits he tenders and warrant discussion.

First, Plaintiff claims in paragraph 5 of his Declaration that in May 2003, **[REDACTED]**.  (Pope Decl. ¶ 5.)  In fact, Plaintiff's letter requesting the accommodation actually asked that Plaintiff **[REDACTED]**.  (Pope Decl. Ex. A.) (emphasis added).

Although the issue of whether Plaintiff received a reasonable accommodation from ACP in 2003 is not material to the pending motion, Plaintiff's belated attempt to suggest that ACP did not meet its reasonable accommodation obligations by re-characterizing the undisputed written record by way of a post-hoc Declaration is not appropriate.  First, the Complaint states that Plaintiff "requested and was granted a reasonable accommodation."  (Compl. ¶ 8.)  Second, ACP did not, as Mr. Pope now claims in his Declaration, **[REDACTED]**.  (Pope Decl. ¶ 8.)  ACP's written response to Plaintiff's request **[REDACTED]**.  (Second Declaration of Robert Doherty dated Sept. 13, 2007 ("Second Doherty Decl.") Ex. 1.)[3]  The letter stated that, **[REDACTED]**.  Id.

Second, Plaintiff states in his Memorandum's Introduction that "[a]s a result of ACP's actions, the Agency decided not to hire Mr. Pope and withdrew its conditional offer of employment."  (Opp'n at 2).  There is no support for this contention in the record, other than Plaintiff's speculation which is not based on any facts.  (Pope Decl. ¶ 25); see Fed. R.Civ. P. 56(e) ("affidavits shall be made on personal knowledge . . . and shall show affirmatively that the affiant is competent to testify on the matters stated therein.")  If anything, all of the evidence submitted by Plaintiff suggests that there were numerous other grounds for NSA's decision to rescind its conditional offer.  For example, Plaintiff states that he had "provided the Agency with separate and specific

---

[3]    This letter has been filed under seal because it makes reference to Plaintiff's medical condition.

authorizations directed to [his] health care providers for the disclosure of [his] medical condition." (Pope Decl. ¶ 16; Compl. ¶ 15.) Thus, NSA might have made its decision based on information from Plaintiff's health care providers. Furthermore, as shown in the investigator's report, Plaintiff's personnel file contained **[REDACTED]** – information that Plaintiff does not contend should not have been disclosed -- that could have been the basis for the NSA's decision to retract its offer. (Pope Decl. Ex. E at 10.)

Third, Plaintiff purports to recount in paragraph 24 of his Declaration six allegedly defamatory statements contained in the investigator's report but does so inaccurately in two key instances. Plaintiff claims that Mr. Doherty told the investigator that **[REDACTED]**. (Pope Decl. ¶ 24(5).) According to the report, Mr. Doherty said that **[REDACTED]**. (Pope Decl. Ex. E at 11.) (emphasis added). The missing word **[REDACTED]** puts the statement in a whole different light.

Fourth, Plaintiff also claims that Mr. Doherty stated that **[REDACTED]**. (Pope Decl. ¶ 24(6).) However, Plaintiff fails to include the key preceding phrase. The report states: **[REDACTED]**. (Pope Decl. Ex. E at 11) (emphasis added).

The parts of Mr. Doherty's reported statements that were omitted from Plaintiff's Declaration are significant and further demonstrate, as discussed below, that none of the statements were defamatory under D.C. law.

Finally, the documents that have been introduced by Plaintiff from the background investigation file are significant in three other respects.

First, as discussed infra, the information noted in the investigation file taken from Plaintiff's personnel file reference facts which fully support Mr. Doherty's statements about Plaintiff. Second, the investigator's report indicates that Mr. Doherty also made

positive comments about Plaintiff.  For example, it stated that Mr. Doherty "found [Plaintiff] to be creative, talented, and an excellent writer."  (Pope Decl. Ex. E at 10; <u>see also</u> Second Doherty Decl. ¶ 6) (confirming that he made such positive statements).  Third, the report also makes clear that the NSA investigator specifically requested the information that Plaintiff claims ACP should not have disclosed.  The cover letter to the "report of investigation" states:  **[REDACTED]**.  (Pope Decl. Ex. D) (emphasis added).  Mr. Doherty confirms that he did not volunteer any information to the investigator and only responded to specific questions.  (Second Doherty Decl. ¶ 4.)  These facts make clear that Mr. Doherty was responding to direct questions posed by the investigator and that this information was, therefore, within the scope of the Authorization signed by Plaintiff.

## III.    ARGUMENT

### A.    Plaintiff has failed to state a claim for breach of contract.

Plaintiff has little to say about why his breach of contract claim should not be dismissed, other than to repeat the argument that the Authorization did not permit ACP's Vice President of Governmental Affairs and Public Policy, Robert Doherty, to make derogatory, defamatory and false statements about him.[4]  The argument has no merit because the Authorization cannot now be rewritten to exclude information that is derogatory or allegedly defamatory, and Plaintiff has presented no evidence -- despite his submission of a Declaration -- to suggest that any of Mr. Doherty's statements were

---

[4]   The interpretation of the Authorization's scope is a legal question to be decided by the Court.  <u>See</u> <u>Woodfield v. Providence Hosp.</u>, 779 A.2d 933, 937 (D.C. App. 2001) (holding that release authorizing prior employer to release information for background investigation was a contract and interpreting same); <u>Unfoldment, Inc. v. D.C. Contract Appeals Bd.</u>, 909 A.2d 204, 209 (D.C. App. 2006) ("proper interpretation of a contract is a legal question").

actually false.  The Authorization authorized the NSA investigator to obtain "<u>any</u>

information relating to [Plaintiff's] activities" from ACP, and it authorized ACP to

release "such information . . . regardless of any previous agreement to the contrary."

(Pope Decl. Ex. C.)  As discussed in ACP's opening brief, derogatory and/or defamatory

information would be highly relevant to the background investigation and is clearly

included in the phrase "any information."  <u>Id.</u>

    In <u>Woodfield v. Providence Hospital</u>, 779 A.2d at 938, the D.C. Court of Appeals

confronted facts similar to those in this case.  In connection with an employment

application, the plaintiff signed a written release authorizing her prior employers to

furnish "any information of concern to [her] record" to background investigators working

for the prospective employer.  After her former employer stated that the plaintiff had not

been promoted because of her poor performance, she brought a defamation action against

the former employer.  <u>Id.</u> at 936.  The court held that "the release is valid and acts as a

consent to the assumedly defamatory statements by [the former employer and

supervisor]."  <u>Id.</u>  As in <u>Woodfield</u>, Plaintiff consented to Mr. Doherty's allegedly

defamatory statements when he signed the broad Authorization.

    Even assuming for the sake of argument that the broad Authorization contained an

unstated exception for defamatory statements, Plaintiff cannot show that the alleged

statements by Mr. Doherty are defamatory under D.C. law.  The D.C. Court of Appeals

has held that

> [a] publication is defamatory if it tends to injure plaintiff in his trade,
> profession or community standing, or lower him in the estimation of the
> community.  <u>But an allegedly defamatory remark must be more than
> unpleasant or offensive; the language must make the plaintiff appear
> "odius, infamous, or ridiculous."</u>

<u>Howard Univ. v. Best</u>, 484 A.2d 958, 989 (D.C. App. 1984) (emphasis added).

The statements that Mr. Doherty allegedly made to the investigator and which Plaintiff contends are defamatory are as follows:

**[REDACTED]**.

(Pope Decl. Ex. E at 10-11).[5]

The statement that **[REDACTED]** can hardly be said to make Plaintiff appear "odius, infamous, or ridiculous," and therefore is not defamatory.   Howard University, 484 A.2d at 989.  The remaining alleged statements are fairly characterized as Mr. Doherty's opinion that **[REDACTED]**.  In Howard University, the D.C. Court of Appeals held that these types of statements are not defamatory as a matter of law.  The plaintiff in Howard University, the former chair of a University department, contended that a report stating that she had actively opposed and did not cooperate with the University's administration was defamatory.[6]  Id. at 988.  Although these statements placed the plaintiff in Howard University in an unfavorable light and led others in her professional community to conclude that the plaintiff could not get along with university management, id., the court nonetheless held that these words were not defamatory on their face because they did not make the plaintiff appear odious, infamous or ridiculous.  Id. at 989. Likewise, Plaintiff in this case cannot make this showing.

Furthermore, the alleged statements by Mr. Doherty were very general opinions about Plaintiff's character and abilities which cannot be considered defamatory under

---

[5]      Although Plaintiff purports to restate these statements in paragraph 24 of his Declaration, the NSA investigator's report is the more reliable source of the alleged statements for the reasons discussed in ACP's Response to the Plaintiff's Statement of Facts, supra at 3.

[6]      The actual language from the report was as follows:  "[T]he present chairman is actively opposed to the present administration.  This lack of cooperation has forced college administration into leadership activities which more appropriately should have been handled by this department."  Id. at 988.

D.C. law.  See Hargrow v. Long, 760 F. Supp. 1, 3 (D.D.C. 1989) (former supervisor's

statement to prospective employer that plaintiff was "wholly incompetent" was a "non-

actionable statement of opinion."); Myers v. Plan Takoma, Inc., 472 A.2d 44, 48 (D.C.

App. 1983) (statement that plaintiffs were "a shady group of bar owners" was an "opinion

of plaintiffs' character based on plaintiffs' other business associations" and was not

defamatory).

Finally, other than a bald statement in his Declaration that Mr. Doherty's

statements were false, Plaintiff has offered no facts to support his claim even though such

facts would be within his knowledge.  See, e.g., Matthews v. Hesburg, 504 F. Supp 108,

114 n.16 (D.D.C. 1980) ("mere allegations even in an affidavit, unsupported by specific

facts, are insufficient to resist a motion for summary judgment").  In fact, there is ample

evidence in Plaintiff's personnel file, set forth in the NSA investigative report introduced

by Plaintiff, showing that Mr. Doherty's statements were true.  On the issue of

**[REDACTED]**  (Id.)  In short, Plaintiff has introduced no evidence Mr. Doherty made

false statements about him, and the record evidence is, in fact, to the contrary.

> **B.**     **Plaintiff fails to state a claim that ACP violated the ADA's**
> **confidential medical information provisions.**

Plaintiff does not argue that the ADA's requirement that ACP maintain the

confidentiality of his medical information could not be waived by him.  Instead, he

claims that the Authorization's broad language authorizing the release of "any

information relating to [Plaintiff's] activities" by ACP did not actually include medical

information within its scope.  Plaintiff provides no legal or factual support for this

contention.  He only argues that the Authorization could not have included this

information because it required Plaintiff to execute separate releases for medical

institutions, hospitals and health care providers.  (Opp'n at 9.)  A careful examination of this provision makes clear that it in no way limits the information that Plaintiff agreed could be released by his former employers.  The provision states:

> I understand that, for financial or lending institutions, medical institutions, hospitals, health care professionals, and other sources of information, a separate specific release will be needed, and I may be contacted for such a release at a later date.

(Pope Decl. Ex. C.)  This provision is nothing more than Plaintiff's promise to the United States that he will cooperate in the investigation by providing additional releases that may be required by the banking and health care institutions that must also provide information for the background investigation.  This language does not purport to limit what information can or should be provided by an employer which is addressed in the first and fourth paragraphs of the Authorization.

The fact that Plaintiff executed "separate and specific authorizations directed to [his] health care providers for the disclosure of [his] medical condition" (Pope Decl. ¶ 16) also highlights that the NSA investigator would have and in all likelihood did obtain all of Plaintiff's medication information anyway from his health care providers.   Thus, even assuming solely for the sake of argument that the Authorization did not include medical information within its scope, ACP's provision of the limited medical information relating to his request for a reasonable accommodation caused no harm to plaintiff.  This fact also disposes of Plaintiff's argument that the NSA investigator would have been "less likely" to obtain this information had ACP kept the information in a separate file.

### C.    Plaintiff has not stated a claim of retaliation.

Plaintiff does not dispute that there was a <u>thirty-month</u> gap between his request for a reasonable accommodation in 2003 and ACP's provision of information concerning

Plaintiff to the NSA investigator in 2006. Plaintiff also fails to point to any other evidence to establish a causal link between these two events. As the Supreme Court has held that a gap of 20 months "suggests, by itself, no causality at all," ACP's motion to dismiss this claim should be granted. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). In fact, the D.C. Circuit rejected the claim of a causal connection where the gap was only eight or nine months. Mayers v. Taborens' Health & Safety Fund of N. Am., 478 F.3d 364, 369 (D.C. Cir. 2007) (eight or nine month temporal gap too long to establish causation for ADA retaliation claim); Meco Corp. v. NLRB, 986 F.2d 1434, 1437 (D.C. Cir. 1993) (eight month gap between employees' protected activities and their discharge "militates against any inference of anti-union motivation"); see also Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C. 1992) (one year temporal gap too great to support inference of retaliation).

        This is not a case where there is other evidence that could establish the requisite causal link. In the Illinois District Court case cited by Plaintiff, Enright v. Illinois State Police, 19 F. Supp. 2d 884, 889 (N.D. Ill. 1998), the court declined to dismiss the retaliation count because there was other significant evidence to support the claim, including the initiation of "a program of systematically directing [the plaintiff's] supervisors to lower her performance ratings" after the plaintiff engaged in protected activity. Id. at 890. In so holding, the district court had to distinguish Seventh Circuit precedent holding that causation could not be established by temporal proximity as short as four months where, as here, there was no other evidence of causation. Id. at 890-91 (citing Hughes v. Derwinski, 967 F.2d 1168 (7th Cir. 1992)).

Plaintiff's theory that the 2006 background investigation was the first opportunity that ACP had to retaliate against Plaintiff also has no merit in fact or law.  Although Plaintiff cites Price v. Thompson, 380 F.3d 209 (4th Cir. 2004), for this proposition, the Fourth Circuit in that case limited the "first opportunity" theory to the "failure-to-hire context" which does not apply here.  Id. at 213.  The Court stated:

> [A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity.  We assume, without deciding, that in the failure-to-hire context, the employer's knowledge coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case.

Id. (emphasis added).  It is undisputed that Plaintiff remained in ACP's employ for nearly two years after he requested and was granted a reasonable accommodation for his disability.  (Compl. ¶ 8.)  Under these circumstances, the 2006 background investigation was plainly not ACP's first opportunity to retaliate if it had been inclined to do so. Plaintiff's first opportunity argument is so broad that it would essentially override the Supreme Court and D.C. Circuit precedents properly holding that temporal proximity is a key element of such a retaliation claim where there are no other facts to establish causation.  See Clark, 532 U.S. at 273-74; Mayers, 478 F.3d at 369.

The Supreme Court made clear in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007), that a plaintiff's "pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action. . . . on the assumption that all of the allegations in the complaint are true."  Id. (internal citations and quotations omitted).  In light of the thirty-month gap between the protected activity and the alleged retaliatory action, Plaintiff cannot even create a "suspicion," let alone state a claim, of retaliation.

**CONCLUSION**

For all the reasons set forth above and its opening Memorandum of Points and Authorities, the Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

_____/s/_____
Frank C. Morris, Jr.
Bar No. 211482

_____/s/_____
Minh N. Vu
Bar No. 444305
1227 25th Street, N.W.
Washington, D.C. 20037
(202) 861-0900

Attorneys for American College of Physicians, Inc.

DATED: September 17, 2007

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Redacted Memorandum in

Support of Defendant American College of Physicians, Inc.'s Motion to Dismiss, the

Second Declaration of Robert Doherty and redacted Exhibit 1 thereto was served this

17th day of September, 2007, through the Court's ECF system, on the following:

> Alan Lescht
> Alan Lescht and Assoc., P.C.
> 1050 17th St., N.W., Suite 220
> Washington, D.C. 20036
>
> Attorney for Plaintiff

_____/s/_____
Minh N. Vu
D.C. Bar No. 444305

### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF COLUMBIA

| | |
|---|---|
| **JACK POPE,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:07cv01023-RCL** |
| **AMERICAN COLLEGE OF PHYSICIANS, INC.,** | |
| **Defendant.** | |

### SECOND DECLARATION OF ROBERT DOHERTY

I, Robert Doherty, declare as follows based on my personal knowledge:

1.      I am Senior Vice President, Governmental Affairs and Public Policy, of the American College of Physicians (ACP).  I have held this position since 1998.  My office is located at 2011 Pennsylvania Avenue, N.W. in Washington, D.C.  I am submitting this second declaration in support of ACP's Motion to Dismiss the Complaint filed by Jack Pope, a former employee of ACP.

2.      In May 2003, Mr. Pope requested a reasonable accommodation under the Americans with Disabilities Act.  A true and accurate copy of my memorandum to Mr. Pope dated July 28, 2003 responding to his request and providing a reasonable accommodation is attached as Exhibit 1.

3.      In January 2006, an investigator who was conducting a background investigation of Mr. Pope for a position with the National Security Agency requested an interview with me.

4.      I did not volunteer information to the investigator but only responded to specific questions.

5.    I recall telling the investigator, in response to a specific question, that I did not have any current knowledge of Mr. Pope's medical conditions that might or might not affect his suitability for employment.  I did not disclose any confidential medical information, and in fact, I recall telling the investigator that he would have to speak with Mr. Pope about any medical information that might be relevant to his employment.

6.    I also stated, as noted in the report from the investigator, that I found Mr. Pope to be "creative, and an excellent writer."   Again, in response to a specific question, I stated that "there was no indication that he could not be trusted to keep a secret."   I made these comments because I wanted to emphasize that Mr. Pope had very positive talents that he could bring to another position and I wanted to make sure that those were noted in the investigator's record.

I declare under penalty of perjury that the foregoing is true and correct.

Date: September 13, 2007

Robert Doherty

# EXHIBIT 1 TO SECOND DECLARATION

# OF ROBERT DOHERTY

# (DOCUMENT FILED UNDER SEAL)

xxx